## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAMELA J. BALES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-414-CVE-PJC** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Claimant, Pamela J. Bales, ("Bales"),  pursuant to 42 U.S.C. § 405(g), requests judicial

review of the decision of the Commissioner of the Social Security Administration

("Commissioner") denying Bales' applications for disability benefits under the Social Security

Act, 42 U.S.C. §§ 401 *et seq*.  Bales appeals the decision of the Administrative Law Judge

("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that

Bales was not disabled.  The case has been referred to the undersigned for report and

recommendation. For the reasons discussed below, the undersigned recommends that the

Commissioner's decision be AFFIRMED.

### Background and Hearing Testimony

On the date of the administrative hearing on November 18, 2013, Bales was 54 years of

age.  (R.  80).  Bales claimed a disability onset date of February 11, 2012. *Id.* That date is the day

after an unfavorable decision was entered in Bales' previous claim for disability benefits. *Id.*

Bales testified that her first claim for benefits was filed in 2004 and that she alleged in that claim

that she suffered from panic attacks and migraines. (R. 81). In her second application for

benefits, Bales claimed disability due to bipolar disorder, anxiety, depression, diabetes and thyroid conditions. *Id.* She was again denied benefits and appealed that decision in the District Court. (R. 81-82).[1]  Bales admitted that the District Court "didn't disagree with Judge Rose's decision." (R. 82). Bales testified that the difference in her condition since ALJ Rose's decision is that she has "a lot more pain" with her back, her feet swell, that she still has anxiety problems and that she cannot go shopping by herself. (R. 82). She feels like people are staring at her and it makes her nervous. (R. 90-91). She has gone to the doctor about her back because her left hand and the top of her shoulders go numb.(R. 91). She testified that she was having "real sharp pain" in the middle of her back at the time of the hearing, at the level of eight on a 10-point scale. (R. 91-92). For treatment, she takes a medication for muscle spasms and another medication which is a mild painkiller. (R. 92). The medication makes her sleepy. *Id.*  She testified that her doctor had x-rays of her back and she was told part of her pain is arthritis and she has "calcification" in her spine. (R. 93).

Regarding her daily activities, Bales testified that she lives in an apartment with her daughter and seven-month old grandson. (R. 85). She does not drive because she does not have a driver's license. (R. 87-88). Her mother drove her to the hearing. *Id.* She does not attend church or social activities. (R. 88). She sleeps until noon, and stays "pretty much" seated in a chair

---

[1]Bales appealed ALJ Deborah L. Rose's denial of benefits to the United States District Court for the Northern District of Oklahoma. (Case 4:10-cv-00408-PJC). Magistrate Judge Paul J. Cleary reversed and remanded the case to the Commissioner for reconsideration of opinion evidence. *Id.* ALJ Rose reconsidered the opinion evidence and again denied benefits. That decision was appealed to the U.S. District Court for the Northern District of Oklahoma. (Case 4:12-cv-00601-FHM). Magistrate Judge Frank H. McCarthy entered an Opinion and Order on October 22, 2013, almost a month before the hearing in this case, affirming the Commissioner's denial of disability benefits.  *Bales v. Colvin*, N.D. Okla. (2013 WL 5728525) (Oct. 22, 2013). The Tenth Circuit upheld the District Court's ruling on August 15, 2014, seven months after ALJ Crutchfield entered the decision at issue in this case. *Bales v. Colvin,* 576 Fed.Appx. 792 (10th Cir. 2014) (unpublished).

during the day but she does help take care of the baby, changing his diaper, feeding and burping him. (R. 93).  She cooks and does laundry. (R. 93). She said "I've basically pretty much learned to live with the pain."  (R. 93).  When asked if her daughter was concerned that her baby may be at risk when Bales is on pain medications, Bales said she does not take the pain medication "when I'm around him." (R. 94).

Under questioning by her attorney, Bales testified that she does not take care of the baby by herself, that there is always somebody else there. *Id.* Her left hand started going numb just in the last couple months before the hearing. *Id.* She had been diagnosed with a mild case of carpal tunnel several years before. *Id.*  She said she has problems opening cans or jars and packages. (R. 95). The numbness across the top of her shoulders happens "pretty much" daily and lasts two, three hours or sometimes all day. *Id.* Bales testified that she can sit upright in a chair for thirty minutes before she "absolutely cannot sit any longer" because of the pain in her back and numbness across her shoulders. (R. 95-96). She has to get up and walk across the room for "maybe five minutes." (R. 96). She can stand in one place five to ten minutes before her back "starts bothering" her. *Id.*  Bales testified that sometimes her feet swell. *Id.* Her doctors have told her the swelling is connected to the diabetes. *Id.* She takes "pills" for diabetes and her blood sugar readings are usually where the doctors want them to be. (R. 96-97). That is the only symptom she attributes to diabetes. (R. 97).  She doesn't go to bed until one or two in the morning and wakes up because of pain in her sides and back. (R. 97).  She can cook and do laundry about two or three minutes, then she has to sit down. *Id.* She has to sit down because standing up bothers her back. (R. 98). She sits about three or four minutes and then goes back to do some more chores. *Id.*

When asked by her attorney if the medications she is taking are controlling her psychological symptoms, she answered "yes." (R. 98). She then testified that she is still having anxiety and depression "[p]retty much daily." *Id.* The depression "causes a lack of motivation to do things." *Id.* She said that she "usually will not get up and cook. I will not clean the house. I do keep myself clean." (R. 99). Anxiety is "pretty much everyday" and is constant. *Id.* She does not have mood swings: "[l]ately it's just with the depression." *Id.* She forgets things like her appointments. *Id.* She has to have them written down on a card. *Id.*

## Procedural History

As noted above, Bales filed  this application for supplemental security income on December 6, 2012, with a protective filing date of November 13, 2012, alleging an onset of disability date of February 11, 2012. (R. 193). Her application was denied initially and on reconsideration.  (R. 110-131, 134-143).  A hearing before ALJ B. D. Crutchfield was held on November 18, 2013.  (R. 74-108).  By decision dated January 7, 2014, the ALJ found that Bales has not been under a disability within the meaning of the Social Security Act since November 13, 2012.  (R. 64-73).  On May 28, 2015, the Appeals Council denied review of the ALJ's findings. (R. 1-6).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

4

work in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a

five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[2]  *See also Williams*

*v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps).  "If a determination can be made at

any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not

necessary."  *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported

by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to

support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the

court will "meticulously examine the record in order to determine if the evidence supporting the

Agency's decision is substantial, taking 'into account whatever in the record fairly detracts from

its weight.'"  *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The court

---

[2]Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

"may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).  Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### Decision of the Administrative Law Judge

At Step One, the ALJ found that Bales has not engaged in any substantial gainful activity since November 13, 2012. (R. 66).  At Step Two, the ALJ found that Bales has severe impairments of: chronic back pain, degenerative joint disease of the lumbosacral spine, chronic knee pain, obesity, anxiety, bipolar disorder and diabetes mellitus. *Id.*  At Step Three, the ALJ found that Bales' impairments do not meet a Listing.  (R. 66-67). Regarding Bales' mental impairments, the ALJ found she has a mild restriction in activities of daily living; moderate difficulties in social functioning and concentration, persistence or pace; and, that she had experienced no episodes of decompensation of extended duration. (R. 67-68).

The ALJ determined that Bales has the RFC to perform less than the full range of medium work as defined in 20 C.F.R. 416.967(c); that she is limited to simple, routine tasks and can have no contact with the public. (R. 68).  At Step Four, the ALJ found that Bales could return to her past relevant work as an apartment cleaner and stocker. (R. 72). The ALJ also determined that, considering her age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that Bales can perform. (R. 72).  The case was thus decided at Step Four of the evaluative sequence with an alternative Step Five finding. *Id.*

**Review**

Bales asserts that the ALJ failed to properly consider and weigh medical opinions and evidence; that she failed to consider Bales' obesity and its effects on Bales' impairments; and that she failed to perform a proper credibility determination. [Dkt. 12, 16].

Bales first contends the ALJ improperly gave the opinions of non-examining consultants more weight than the opinion of her treating physician, Dr. Touchet.[3] [Dkt. 12 at 3]. Bales admits that this medical evidence was "included from [her] previous application" but maintains that the ALJ in this case erred in concluding "the objective medical records do not support certain findings in the Questionnaire" filled out by Dr. Touchet. [Dkt. 12 at 3]. As required, the ALJ considered the Mental Impairment Questionnaire from Dr. Touchet. (R. 71). *See Hamlin*, 365 F.3d at 1215 (even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ). The ALJ in this case found the objective medical record did not support the extreme and marked limitations identified on the questionnaire. *Id.*  Bales cites to "23 pages of treatment records" from Dr. Touchet that she describes as a "better longitudinal picture of [her] functional abilities." [Dkt. 12 at 5]. The ALJ in this case reviewed those records as well as the medical evidence generated after the previously adjudicated time period. (R. 69). She pointed out that at the time of Bales' alleged onset date, February 11, 2012, her bipolar disorder and depression were considered to be in full remission at

_____

[3]Bryan Touchet, M.D., Bales' treating physician at the Family & Children Services center at the time of the previous claim, signed a mental impairment questionnaire on May 27, 2008, in which he assessed marked and extreme functional limitations which the previous ALJ assigned limited weight for several reasons. *Bales v. Colvin* 576 Fed.Appx. 792 (10th Cir. 2014) (unpublished). The District Court and the Tenth Circuit held that the ALJ properly rejected the physician's opinion because, among other things, the opinion was not supported by his own records which indicated improvement and stabilization on medications. *Id.*

Family & Children's Services. *Id.* In addition, the ALJ explained her decision to give no weight to

Dr. Touchet's questionnaire form, and cited opinions from psychologists who examined Bales

after Dr. Touchet's questionnaire form was filled out, as evidence that Bales' mental impairment

improved. (R. 71). The record supports the ALJ's finding in this regard.  Minor W. Gordon,

Ph.D., evaluated Bales on October 3, 2010. (R. 292-294). His conclusion was that Bales was

"suffering from a mild level of both anxiety and depression which alone should not preclude her

from gainful employment." (R. 294). As noted by the ALJ:

> At the time of her alleged onset, [Bales] bipolar disorder and
> depression were considered to be in full remission at Family &
> Children's Services. On November 12, 2012, Ms. Bales was quoted
> by FCS saying she was "doing okay." Her attention/concentration
> was adequate. On April 18, 2013, state agency consultant Deborah
> Hartley, Ph.D. wrote the claimant had not reported any new mental
> health allegations or worsening of symptoms. Dr. Hartley believed
> the claimant's abilities to understand simple instructions and to
> remember work-like procedures were not significantly limited.

(R. 70) (exhibit citations omitted).  The undersigned concludes that the ALJ demonstrated she had

properly considered the medical evidence and that substantial evidence supports her decision to

discount Dr. Touchet's opinion on the May 2008 form as to the severity of Bales' mental

limitations.

Next, Bales complains that the ALJ improperly gave little weight to the opinion of Dr.

Meagham Brady, who signed an RFC form on November 13, 2013, regarding Bales' ability to do

work related physical activities. [Dkt. 12 at 5-6].  That RFC form reflects findings that: during an

eight-hour workday, Bales could sit, stand and walk an hour at a time for a total of two hours

during the entire workday. (R. 493).  Bales was limited to occasionally lifting up to six to ten

pounds and occasionally carrying up to 20 pounds. *Id.* Bales was limited in using her feet for

pushing and pulling leg controls, but not limited in use of her hands for repetitive movement,

including grasping. (R. 494). Bales was not able to crawl or climb and was limited to occasional

bending, squatting, reaching, handling and fingering. *Id.* She was totally restricted from

unprotected heights. *Id.* She was assessed a moderate limitation in being around moving

machinery, exposure to marked changes in temperatures and humidity, exposure to dust, fumes

and gases, driving and vibrations. *Id.* Dr. Brady answered "no" to the question: "If your patient

was allowed to perform a job within the above parameters, would she be able to perform such

work on a sustained and continuing basis (8 hours per day, 5 days per week)?" *Id.* As explanation

for her opinion, Dr. Brady wrote: "patient cannot not stay in one position for more than an hour at

a time and sometimes needs to lay down to relieve pain." (sic). *Id.* Dr. Brady opined that Bales

had impairments that would interfere with her ability to engage in work that required a consistent

pace of production but that she had no impairment in concentration caused by pain or other

impairments. (R. 495). To the question: "Based on your observation and treatment of this patient,

do you believe the patient will experience symptoms, on a chronic basis, from her underlying

medical condition(s) which would reasonably be expected to cause distraction from job tasks or

result in a failure to complete job tasks in a timely manner for a total of one or more hours during

a typical eight (8) hour workday?" Dr. Brady answered "Yes." *Id.* Her explanation was: "Due to

fact that patient has to alternate position frequently and sometime lay down, completion of tasks

in a timely manner is not possible." *Id.* She anticipated that Bales' impairments or treatment

would cause Bales to be absent from work more than three times a month. *Id.* She indicated that

Bales' medications would not interfere with her ability to concentrate or reason effectively. *Id.* Dr.

Brady cited the following medical findings to support her opinions:

> Patient reports she has to change positions frequently to relieve pain
> and during exams she does that. On exam, she has paraspinal
> tenderness, positive straight leg test + decrease ROM. Xray of

> cervical spine mild degenerative disc disease C4-C5, C5-C6, C6-
> C7. Lumbar spine x-ray mild arthrosis at L4-L5.

(R. 496).

The ALJ summarized Dr. Brady's RFC findings and compared them to reported findings and range-of-motion charts by Subramaniam Krishnamurthi, M.D., who examined Bales on September 3, 2010. (R. 70). As noted by the ALJ, Dr. Krishnamurthi reported Bales' dorsolumbar region and her knee joints showed ranges of motion within normal limits and the range of motion of all four extremities was within normal limits. (R. 283-290). On the day of the examination, Bales told Dr. Krishnamurthi that she could walk a mile, which the ALJ observed was "not an inconsiderable distance, particularly for someone alleging intense back and knee pain." (R. 70).[4]

As the Commissioner points out, Drs. Moore and Clayton, non-examining agency consultants, had opinions at odds with Dr. Brady's opinion. [Dkt. 15 at 8]. The opinions offered by Yondell Moore, M.D., dated January 22, 2013, and Charles Clayton, M.D., dated April 23, 2013, indicate that Bales' 2012 treatment records reflected normal range of motion, normal steady gait, no problems getting on/off exam table, no obvious muscle weakness or instability, normal sensation, no crepitus, no radiculopathy and that she reported no issues in completing household chores, cooks meals, goes to the public library, shops for food and uses no assistive devise for ambulation. (R. 116, 127). The ALJ noted their opinions and gave them "great weight." (R. 71).

The ALJ explained the reasons for the little weight he accorded Dr. Brady's opinion as follows:

> Dr. Brady's name appears nowhere else in the records, suggesting she
> was never a treating physician to the claimant. That role appeared
> occupied by Ian Bushyhead, D.O. Dr. Brady makes no reference to

---

[4]The undersigned notes that Dr. Krishnamurthi's opinion was also from the previously adjudicated time period. (R. 283-290).

any examining medical report. Instead, she simply checks boxes and writes statements that are obviously based solely on Ms. Bales' remarks about herself. An example is Dr. Brady's statement the claimant "sometimes needs to lie down." No treating or examining source made that statement and the medical records do not indicate the actuality of such a need. Nor do the records suggest any physical requirement for the claimant to alternate her postural positioning after one hour. One hour is a considerable length of time to maintain any postural position or activity such as walking. Dr. Brady indicated in her form the claimant could sit, stand, or walk for an hour at a time. The undersigned does not find credible the statement that an individual who could maintain a position or an action for an hour is also unable to complete tasks in a timely manner. Yet, that is the statement essentially made by Dr. Brady. She also made the incongruous statement that the claimant, supposedly greatly restricted physically by pain, is not limited in any way in her concentration.

(R. 71). (exhibit citations omitted).

The Commissioner admits that the ALJ was mistaken when she concluded that Dr. Brady was not Bales' treating physician. [Dkt. 17 at 7-8]. However, the Commissioner argues that the x-rays ordered by Dr. Brady after Bales complained of chronic neck and back pain on Oct. 29, 2013, contain "muted findings" and did not support the significant restrictions Dr. Brady endorsed. *Id.* The Commissioner further asserts that the ALJ correctly found that Dr. Brady's conclusions were based on Bales' subjective complaints and that those complaints were not supported by the treatment records. [Dkt. 15 at 7-8].

Review of Dr. Brady's RFC form supports the Commissioner's argument that Dr. Brady was paraphrasing Bales' subjective complaints: "Patient reports she has to change positions frequently to relieve pain and during exams she does that." (R. 496). As the Tenth Circuit has held, this is an entirely appropriate reason to disregard the opinion of a treating physician. *See Boss v. Barnhart*, 67 Fed.Appx. 539, 2003 WL 21357260, at *3 (10th Cir. 2003) (rejecting the opinion of a treating physician because it appears to be based on the claimant's subjective complaints is a sufficiently

specific and legitimate reason for doing so).  Dr. Brady did not document this finding in any of her other treatment notes.

The record indicates, as Bales argues, that both Ian Bushyhead, M.D., whom the ALJ credited with being Bales' treating physician, and Dr. Brady were Bales' treating physicians at the Indian Health Care Resource Center. [Dkt. 12 at 6]. Yet, Bales does not point to any evidence from either physician that supports the marked and extreme limitations assessed in Dr. Brady's RFC of November 13, 2013.  As the ALJ observed, no treating or examining source made a statement that Bales "sometimes needs to lie down" or alternate her postural positioning after one hour that would support Dr. Brady's RFC form. (R. 70-71). Indeed, review of the records cited by Bales show that complaints of thoracic spine muscular tenderness and muscle spasm of bilateral thoracic/cervical spine with palpation[5] were recorded but no instructions to limit activities or lie down to relieve pain were given. (R. 304-331). Rather, Bales was encouraged to continue muscoloskeletal stretching exercises she had been given and to avoid strenuous lifting. (R. 306, 317). On October 13, 2012, an emergency room doctor, Michael Schiesel, D.O., reported Bales was being seen for lower back pain. (R. 498-499). He noted there was no midline tenderness of the C-spine, T-spine or L-spine. (R. 499). There was bilateral paraspinal musculature tenderness to palpation but negative straight leg raise test bilaterally. *Id.* Bales told the examining doctor that there was "really nothing new or different about this pain." *Id.* She had no bony tenderness to palpation and Dr. Schiesel said he could see no indication for emergent imaging. *Id.* He said: "She has a normal neurologic exam. I will place her on Lortab 5 mg #10 and Flexeril 10 mg #20. She is to follow up with primary care physician in the next 1 to 2 days..." *Id.* On January 24, 2013, Bales' back pain was noted to be improved. (R. 428). On December 18,

_____

[5]Palpation is the act of feeling with the hand; the application of the fingers with light pressure to the surface of the body for the purpose of determining the consistency of the parts beneath in physical diagnosis. Dorland's Illustrated Medical Dictionary, 31st ed. 2007, p. 1386.

2013, slightly more than a month after Dr. Brady signed the RFC form, Dr. Brady saw Bales for complaints of chronic neck and back pain. (R. 554, 558). Bales reported Baclofen and Meloxicam were not helping and she asked for Flexural which had helped more than Baclofen. (R. 554). Dr. Brady wrote: "... reports back pain was worse in the colder weather. She denies radiation of pain. No weakness." (R. 558). She also observed that Bales had no limb pain. *Id.* Nowhere in this treatment record did Dr. Brady mention that Bales' needed to alternate positions frequently or lay down to relieve pain. A treating physician's opinion may be rejected if his/her conclusions are not supported by his own records. *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (stating that ALJ properly rejected treating physician's opinion because, among other things, the opinion was not supported by the physician's own records which indicated improvement and stabilization on medications) (internal quotations omitted). *See also Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

The ALJ also noted that Dr. Brady's RFC form contained statements that were internally inconsistent, i.e., her opinion that Bales could sit, stand or walk for an hour at a time but was also unable to complete tasks in a timely manner and that Bales is greatly restricted physically by pain but that Bales is not limited in any way in concentration. (R. 71). To the extent that Bales asserts Dr. Brady's opinion should be granted controlling weight simply because it was expressed by a treating physician, the undersigned finds no merit. A treating physician's opinion is given controlling weight if that opinion is well-supported and is not inconsistent with other substantial evidence. *See White v. Massanari*, 271 F.3d 1256, 1259 (10th Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2). If the opinion is deficient in either of these respects, it is not to be given controlling weight. *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011).

In short, despite the ALJ's mistake that Dr. Brady was not one of Bales' treating physicians, the ALJ's explanation for according Dr. Brady's RFC form little weight in determining that Bales is not disabled was sufficiently specific and supported by the record. (R. 70-71). Further, the opinion of Dr. Brady that Bales is unable to perform work on a sustained and continuing basis was not binding upon the ALJ because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. *Castellano*, 26 F.3d at 1029 (a treating physician's opinion on an issue - such as disability status - reserved to the commissioner is not binding on the Commissioner in making the ultimate determination of disability). The ALJ provided specific, legitimate reasons for the weight given to the medical evidence before her and her determination is supported by substantial evidence in the record. The undersigned therefore recommends that the District Court find no error on the part of the ALJ in weighing the medical evidence.

Bales also complains that the ALJ's single citation to a GAF assessment resulted in a flawed decision based on a bare conclusion and that she was required to discuss all the other GAF scores in the record. [Dkt. 12 at 7]. The GAF score represents Axis V of the multiaxial assessment system. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-36 (Text Revision 4th ed. 2000). A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id.* at 32. The GAF score is from 1-100. A score of 61-70 reflects some mild symptoms or some difficulty in social occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* at 34. *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). However, GAF scores are no longer used and were dropped from the most recent edition of the manual for multiple reasons, including a "conceptual lack of clarity" and "questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed.

2013). At any rate, Bales has failed to demonstrate that the ALJ's recitation of all her GAF scores, including those from Dr. Touchet's records, would have resulted in a decision in her favor. While the record must demonstrate that the ALJ considered all the evidence, there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2007).

To the extent that Bales again argues that the ALJ did not adequately address differences between the PRT forms of Drs. King, Moore, Hartley, and Clayton, the undersigned recommends the District Court find no error. The ALJ incorporated limitations to simple, routine tasks and no contact with the public into her RFC assessment. (R. 68). The ALJ's finding of moderate difficulties in Bales' social functioning and in concentration, persistence or pace does not necessarily translate to a work-related functional limitation beyond those already incorporated into the RFC.

Bales contends that the ALJ failed to include obesity in her Step Four findings despite having found obesity to be a severe impairment at Step Two. [Dkt. 12 at 7-8]. The ALJ must demonstrate that she considered all of the claimant's medically determinable impairments in evaluating credibility and in assessing RFC. 20 C.F.R. §416.945(e); SSR 96-8p, 1996 WL 374174 at *5 (ALJ must consider the limiting effects of all a claimant's impairments, even those that are not severe in determining RFC). The ALJ stated that she had considered all Bales' impairments and symptoms and the extent to which they limit Bales' functioning. (R. 67-68). The ALJ thoroughly discussed the medical evidence and there is no indication that the record contains evidence showing further functional limitations were warranted due to obesity than the ALJ allowed in her RFC assessment. The undersigned finds that the ALJ appropriately considered the combined effect of all Bales' medically determinable impairments, severe and non-severe.

Finally, Bales' complaint that the ALJ failed to properly consider the statement from Bales' mother during her credibility determination is equally without merit. [Dkt. 12 at 8-9]. The ALJ

summarized the statement and said that she considered it and found it to be inconsistent with the medical evidence. (R. 71). This she was entitled to do. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (ALJ may consider the consistency or compatibility of nonmedical testimony with objective medical evidence). The Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing *Diaz v. Secretary of Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990)). The undersigned recommends that the District Court decline Bales' invitation to reweigh the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (court will not reweigh the evidence or substitute its judgment for the Commissioner's).

## Conclusion

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The undersigned finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned **RECOMMENDS** that the District Court **AFFIRM** the decision of the Commissioner denying disability benefits to Bales.

## Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation, but must do so by June 28, 2016.  If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b).  A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm

waiver rule"). *Moore v. As true*, 491 Fed. Apex. 921, 923 (10th Cir. 2012) (unpublished), *citing*

*In re Key Energy Res., Inc.*, 230 F.3d 1197, 1200-01 (10th Cir. 2000).

      Dated this 13th day of June, 2016.

_____

Paul J. Cleary
United States Magistrate Judge