UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

PAMELA JO BALES,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )         Case No. 15-CV-0414-CVE-PJC
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner, Social               )
Security Administration                   )
                                          )
                    Defendant.            )

<u>OPINION AND ORDER</u>

        Before this Court is the Report and Recommendation (Dkt. # 17) of Magistrate Judge Paul

J. Cleary recommending that the Court affirm the decision of the Commissioner of the Social

Security Administration denying plaintiff Social Security disability benefits.  Plaintiff has filed an

objection (Dkt. # 18) to the report and recommendation and seeks reversal of the Commissioner's

decision, arguing that the Administrative Law Judge (ALJ) erred in considering and weighing

medical opinions and evidence, in considering plaintiff's obesity and its effect on her impairments,

and in her credibility determination.  Defendant responds that the magistrate judge correctly

concluded that the ALJ committed no error and that the decision should be affirmed.  Dkt. # 19.

**I.**

        On November 13, 2012, plaintiff protectively applied for Title XVI disability benefits,

alleging that she had been disabled as of February 11, 2012.[1]  Dkt. # 11, at 67.  Plaintiff's application

_____

[1]     As the ALJ and magistrate judge noted, plaintiff received two prior unfavorable decisions
        on previous claims for disability benefits.  Plaintiff's first claim for disability benefits was
        in 2004, and plaintiff alleged that she suffered from disabling panic attacks and migraines.
        Plaintiff was denied benefits.  <u>See</u> Dkt. # 17, at 1.  In her second application for disability
        benefits, plaintiff alleged that she suffered from bipolar disorder, anxiety, depression,
        diabetes, and thyroid conditions.  <u>See</u> <u>id.</u> at 1-2.  She was again denied benefits.  <u>Id.</u> at 2.

stated that she suffered from various physical and mental impairments that left her unable to work, including bipolar disorder, anxiety, and diabetes.  Id. at 242.  Plaintiff's claims were denied initially on January 22, 2013, and again upon reconsideration on April 23, 2013.  Id. at 67.  Plaintiff requested a hearing before the ALJ and that hearing was held on November 18, 2013.  Id.

Plaintiff appeared at the hearing and was represented by an attorney.  Id.  Plaintiff was 54 years old on the date of the hearing and testified that she lived in an apartment with her daughter and seven month old grandson.  Id. at 83, 88. Plaintiff testified that the furthest she had gone in school was the twelfth grade.  Id. at 92.  Plaintiff testified to a variety of physical and psychological complaints including back pain, swelling in her feet due to diabetes, and anxiety.  Id. at 85.  For these ailments, plaintiff took a number of prescription medications.  Id. at 95-96.

Plaintiff explained that her anxiety was constant and  made it difficult to perform tasks such as grocery shopping because she felt like people were staring at her and she became nervous.  Id. at 93-94, 102.  She explained that her back pain caused her to experience numbness in her left hand and across the top of her shoulders, sharp pain in the middle of her back, and that, at the time of the hearing her back pain was an eight on a ten-point scale.  Id. at 94-95.  Plaintiff stated that, on a typical day, she sleeps until noon and stays seated in a chair for the majority of her waking hours. Id. at 96.  Plaintiff explained that she could not sleep all the way through the night due to her back pain and that she could not work around the house for more than a few minutes before requiring a break.  Id. at 100.

On January 7, 2014, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 76.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the

---

Plaintiff's alleged onset date of disability for her third claim, at issue in this opinion and order, is the day following the second unfavorable decision.  Id.

alleged onset date and that she had severe impairments affecting her ability to work, including chronic back pain, degenerative joint disease of the lumbosacral spine, chronic knee pain, obesity, anxiety, bipolar disorder, and diabetes.  Id. at 69.  The ALJ further found that her impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  Id. at 69-70.  The ALJ formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony.  Id. at 71.  The ALJ determined that plaintiff could perform less than the full range of medium work as defined in 20 C.F.R. § 416.967(c) and was limited to simple, routine tasks and could have no contact with the public.  Id.

After summarizing the evidence used to formulate plaintiff's RFC, including plaintiff's testimony and the documentary evidence, the ALJ stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  Id. at 70.  Considering plaintiff's RFC, the ALJ found that plaintiff could perform past relevant work as an apartment cleaner or stocker.  Id. at 71-72.  In the alternative, the ALJ found that plaintiff could perform other occupations existing in significant numbers in the national economy.  Id. at 75.  These occupations included kitchen helper and warehouse worker.  Id. at 76.  The ALJ concluded by stating that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and finding that plaintiff was not disabled.  Id.

On May 28, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  Id. at 4.  Plaintiff thereafter sought judicial review, arguing that the ALJ failed to properly consider and weigh medical opinions and evidence, that the ALJ failed to consider plaintiff's obesity

and its effect on her impairments, and that the ALJ failed to properly assess plaintiff's credibility. Dkt. # 12, at 2. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending that the Court affirm the ALJ's decision. Dkt. # 17. Plaintiff has objected to the report and recommendation, renewing her arguments regarding medical evidence, her obesity, and the ALJ's credibility determination. Dkt. # 18. Defendant responds that the ALJ properly assessed plaintiff's claim and that her decision should be affirmed. Dkt. # 19.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

## III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357

4

F.3d at 1142.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work.  *See id.*  Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.  *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence.  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).  The court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision.  Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided the case at step four of the analysis, concluding that plaintiff could perform past relevant work or, in the alternative, at step five of the analysis, concluding that plaintiff could perform other work existing in significant numbers in the national economy.  Dkt. # 11, at 74-75. Having so decided, the ALJ found plaintiff not disabled and denied her claim for disability benefits. Id. at 76.  The magistrate judge recommended that the ALJ's decision be affirmed, concluding that the ALJ committed no error in considering and weighing medical opinions and evidence, in considering plaintiff's obesity and its effect on her impairments, and in her credibility assessment of plaintiff.  Dkt. # 17.

In her objection, plaintiff renews her arguments that the ALJ erred with respect to consideration of medical opinions and evidence, plaintiff's obesity, and plaintiff's credibility. Dkt. # 18. With respect to the medical evidence, plaintiff asserts that the ALJ failed to discuss adequately medical opinion evidence, arguing that the ALJ's decision lacks discussion of uncontroverted evidence upon which the ALJ chose not to rely, as required by the legal standards. Id. at 3. With respect to plaintiff's obesity, plaintiff argues that the ALJ found plaintiff's obesity a severe impairment at step two, but failed to incorporate resulting limitation into plaintiff's RFC at step four. Id. at 12. Finally, as to the ALJ's credibility determination, plaintiff asserts that the ALJ erred by requiring objective medical evidence to prove the severity of plaintiff's symptoms because other sources, such as opinions from family members, may be considered to reach a credibility determination. Id. at 13. Defendant responds that the ALJ committed no error in evaluating plaintiff's claim and asks the Court to affirm the ALJ's decision. Dkt. # 19.

## A.

Plaintiff first argues that the ALJ erred in her consideration of medical opinions and evidence, asserting that the ALJ improperly addressed only the evidence that was favorable to a finding that plaintiff is not disabled and that the magistrate judge's report and recommendation permitted this reversible error. Dkt. # 18, at 3. Defendant responds that plaintiff simply renews her meritless arguments and asks that the Court affirm the ALJ's decision. Dkt. # 19.

Plaintiff raises three specific arguments related to the ALJ's consideration of medical opinions and evidence.  First, plaintiff argues that the ALJ erred by affording more weight to opinions of non-examining consultants than to the opinion of plaintiff's treating physician without giving specific reasons and conducting a specific analysis.  Dkt. # 18, at 4. Plaintiff asserts that a

6

mental impairment questionnaire--which was administered to plaintiff by her treating physician, Bryan Touchet, M.D., and concluded that plaintiff had extreme limitation in social functioning-- should have been given substantial weight. Id.  But plaintiff fails to acknowledge that the ALJ's decision contains specific reasons and analysis to support the ALJ's conclusion that Dr. Touchet's views were entitled to no weight. See Dkt. # 11, at 74.  The ALJ noted that the mental impairment questionnaire was included in plaintiff's previous application for benefits,[2] before concluding that the objective medical records did not support "the questionnaire's extreme and marked mental limitations."  Id.  Dr. Touchet opined that plaintiff had an extreme limitation in maintaining social functioning but, as the ALJ explained, Dr. Touchet was the only physician who opined that plaintiff suffered from such severe limitations.  Id.  The ALJ also noted that subsequent psychologists who had examined plaintiff in the time since Dr. Touchet administered the questionnaire all opined that plaintiff was capable of superficial interaction with co-workers, contrary to the extreme limitation described by Dr. Touchet.  Id.  The ALJ stated that it was upon this basis that she determined Dr. Touchet's opinions were to be afforded no weight.  Id.; see also Langley v. Barnhart, 373 F.3d 1116, 1120 (10th Cir. 2004) (explaining that an ALJ may reject a treating physician's opinion outright only upon the basis that there is contradictory medical evidence).  The ALJ provided sufficient reasoning and analysis to support her conclusion that the opinion of Dr. Touchet should be given no weight. She thus committed no error in this determination.

---

[2]      As the magistrate judge noted, the ALJ considered the mental impairment questionnaire even though it related to a previously adjudicated period, consistent with governing law.  See Dkt. # 17, at 7; see also Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The magistrate judge also noted that this Court and the Tenth Circuit held that the ALJ in the prior adjudication properly rejected Dr. Touchet's opinion,  "because, among other things, the opinion was not supported by his own records which indicated improvement and stabilization on medications."  Id.

Second, plaintiff asserts that the ALJ erred in her consideration of the opinion of another treating physician, Meagan Brady, M.D.  Dkt. # 18, at 6.  Plaintiff argues that the ALJ erroneously gave little weight to the opinion of Dr. Brady, in which she opined about plaintiff's RFC to do work-related activities.  Id.  In rejecting Dr. Brady's opinion, the ALJ compared Dr. Brady's conclusion of marked and extreme limitations on plaintiff's physical ability to perform work-related activities with the conclusion of another examining physician that plaintiff had normal range of motion and motor strength in all of her extremities.  Id. at 74.  The ALJ also compared Dr. Brady's opinion to the opinions of state agency physicians who both determined plaintiff was capable of medium exertional work.  Id.  The ALJ determined that this evidence demonstrated that plaintiff could perform more work-related tasks than Dr. Brady described, concluding that this contradictory medical opinion evidence rendered Dr. Brady's findings unworthy of significant weight.  Id.  The ALJ also concluded that Dr. Brady's report merely paraphrased plaintiff's subjective complaints without substantiating objective medical evidence.  See id. at 73 ("[Brady] simply checks boxes and writes statements that are obviously based solely on [plaintiff's] remarks about herself.").  This is a permissible basis upon which an ALJ may decide not to credit the opinion of a treating physician. See Boss v. Barnhart, 67 F. App'x 539, 542 (10th Cir. 2003) (unpublished)[3] (explaining that a treating physician's opinion based heavily on subjective complaints and at odds with the weight of objective medical evidence is a legitimate basis for an ALJ to discredit a treating physician's opinion).  Substantial evidence supports the ALJ's decision not to afford great weight to Dr. Brady's opinion.  The ALJ did not err in this determination.

---

[3]      This and other unpublished decisions herein are not precedential and may be used for their persuasive value only.  FED. R. APP. 32.1; 10th CIR. R. 32.1.

Finally, plaintiff asserts that the ALJ erred by citing only one global assessment of functioning (GAF) score from a consultative examiner's report. Dkt. # 18, at 9. Plaintiff asserts that the ALJ failed to mention other GAF scores contained in the record and that the Court cannot assume that the ALJ considered this evidence when her decision contained no discussion of it. Id. "A GAF score is a subjective determination which represents the 'clinicians judgment of the individual's overall level of functioning.'"   Dkt. # 17, at 14 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-36 (Text Revision 4th ed. 2000) (DSM)).  As the magistrate judge noted, GAF scores are no longer used and were not included in the most recent edition of the DSM for a variety of reasons, including a "conceptual lack of clarity" and "questionable psychometrics in routine practice." Id. (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013)).  And, even if the use of GAF scores were still a recognized practice, the ALJ is under no obligation to discuss every piece of evidence in the record; the ALJ need only demonstrate that she considered the entire record.   See Mays v. Colvin, 739 F.3d 569, 576 (10th Cir. 2007).  Nothing in the ALJ's decision suggests that she did not review the entire record in reaching her conclusion that plaintiff was not disabled.  Despite plaintiff's assertions to the contrary, the ALJ's failure to include in her decision each and every GAF score contained in the record does not support a conclusion that the ALJ failed to consider the entire record.  The ALJ thus did not err in her inclusion of only one GAF score in her decision.

## B.

Plaintiff next argues that the ALJ erred in her consideration of plaintiff's obesity. Dkt. # 18, at 11-12.  Plaintiff asserts that the ALJ erred by concluding that plaintiff's obesity was a severe

impairment at step two but failing to account for plaintiff's obesity and the effect it had on her other impairments in formulating plaintiff's RFC at step four. Id. at 12. Defendant responds that the magistrate judge correctly concluded that the ALJ thoroughly discussed the medical evidence relating to plaintiff's obesity before determining that plaintiff's obesity did not warrant any additional limitations in plaintiff's RFC. Dkt. # 19, at 3.

The ALJ specifically stated that "[t]he combined effects of obesity with other impairments may be greater than without the obesity. Therefore, the impact of obesity upon the claimant's ability to perform work related activities must be considered in arriving at the residual functional capacity." Dkt. # 11, at 70. And the ALJ's decision reveals that the ALJ considered whether plaintiff's obesity imposed additional functional limitations on plaintiff. Specifically, the ALJ discussed the objective medical evidence that demonstrated that plaintiff had normal range of motion in all of her extremities, despite her obesity. See id. at 73 ("Notwithstanding her weight and her back and knee pain, her dorsolumbar region and her knee joints showed ranges of motion within normal limits. The range of motion of all four extremities was within normal limits.") Having concluded that plaintiff's range of motion was not affected by her weight, nor by her weight's effect on existing knee and back pain, the ALJ did not include additional functional limitations in plaintiff's RFC. See id.

Plaintiff asserts that the ALJ's failure to include limitations based on plaintiff's obesity in her formulation of plaintiff's RFC is an "adjudicative sleight of hand" that constitutes reversible error. See Givens v. Astrue, 251 F. App'x. 561, 566 (10th Cir. 2007) (unpublished) (describing ALJ's conclusion that plaintiff's depression was a severe impairment but failure to discuss impairment in subsequent analysis as an "adjudicative sleight-of-hand" requiring reversal). The ALJ did not determine that plaintiff suffered from a severe impairment and then abandon the impairment

10

in the following analysis.  Instead, the ALJ concluded that the objective medical evidence in the record demonstrated that plaintiff did not suffer from functional limitations caused or exacerbated by her obesity.  The ALJ's conclusion that plaintiff's obesity, while a severe impairment, did not impose any significant functional limitations apart from those already accounted for in plaintiff's RFC is not an "adjudicative sleight-of-hand" requiring reversal.  The ALJ properly considered plaintiff's obesity as a severe impairment and considered whether plaintiff's obesity impacted plaintiff's RFC in any manner.  The ALJ's conclusion that it did not is not reversible error; plaintiff simply disagrees with the ALJ's conclusion.  The ALJ committed no error in her evaluation of plaintiff's obesity and any resulting functional limitations.

## C.

Plaintiff finally argues that the ALJ erred in her credibility determination because the ALJ discounted the function report that plaintiff's mother completed, and required that plaintiff present objective medical evidence to support each of plaintiff's subjective complaints.  Dkt. # 18, at 12.  Defendant responds that the ALJ expressly considered the function report from plaintiff's mother before concluding that it was not wholly supported by the medical evidence and correctly assessed plaintiff's subjective complaints of disabling pain.  Dkt. # 19, at 3-4.

"Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence."  Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence."  Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).  Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132.  An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain.  Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).  An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995).  However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required.  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

The ALJ committed no error in her credibility determination.  The ALJ devoted a large portion of her decision to a discussion of the objective medical evidence and plaintiff's subjective complaints of pain, specifically stating which subjective complaints were not supported by the objective medical evidence.  Dkt. # 11, at 71-74.  And the ALJ discussed the function report prepared by plaintiff's mother, explaining that, while the ALJ considered the report, it did not add to plaintiff's credibility because "[t]he physical limitations [plaintiff's mother] set forth are not wholly supported by the medical evidence." Id. at 74.  The ALJ discounted the function report from plaintiff's mother only after determining that the objective medical evidence contradicted the report. See id.  And plaintiff's assertion that the ALJ required plaintiff to provide objective medical evidence for each subjective complaint is without merit; the ALJ simply stated which subjective

12

complaints were contradicted by objective medical evidence in the record.  At no point did the ALJ

discount any of plaintiff's subjective complaints solely on the basis that plaintiff did not present

corroborating objective medical evidence.  Instead, the ALJ did not accept subjective complaints

that were contradicted by the objective medical evidence in the record.  The ALJ properly assessed

plaintiff's credibility by summarizing the objective medical evidence and subjective complaints and

identifying inconsistencies between the two, thus closely and affirmatively linking her credibility

findings to substantial evidence.  The ALJ thus did not err in her credibility determination.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 17) is

**accepted**. The Commissioner's decision to deny plaintiff's claim for disability benefits is **affirmed**.

A separate judgment is entered herewith.

**DATED** this 19th day of July, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE